Richard C. ANISFELD, Art Hochman, Howard Ballen, Robert Greendorfer, Mary Gagliano, Richard Wildstein, Lawrence Robinson, James Gallagher, Theodor Kalinka, Ann Skapacz, Morris Macy, Lewis Goodkin, Jack Goldstein, Bernard Goldsmith, Ann Rabinowitz, Leonard Rabinowitz and "John Doe 1," "John Doe 2" and "John Doe 3" (First and last names being fictitious intending to designate Limited Partners in Calais Associates, Inc.), Plaintiffs,

v.

CANTOR FITZGERALD & CO., INC., Cantor Fitzgerald Group, Ltd., Cantor Fitzgerald Realty Corp., Cantor Fitzgerald Properties, Tark Incorporated, Tark VII, Inc., William P. Miller, Fredda Weisbard, Gerald L. Chasin, Ronald W. Jeffrey and Bernard Cantor, Defendants.

No. 85 Civ. 9328 (MP).

United States District Court, S.D. New York.

April 7, 1986.

Zuckers & Ballen by Michael Ballen, Brooklyn, N.Y., for plaintiffs.

Rubin, Baum, Levin, Constant & Friedman by Martin Schwartz, New York City, for defendants.

## Opinion

MILTON POLLACK, Senior District Judge.

Two of eleven-named defendants [1] move to dismiss the complaint or, alternatively,

---

1. The defendants are comprised of five corpora- tions, one partnership, and five individuals.

for summary judgment in their favor on the eight counts of the complaint herein purporting to assert claims of (1) violations of Section 11 of the Securities Act of 1933, as amended, 15 U.S.C. § 77a, *et seq.;* (2) violations of Section 12(2) of the Securities Act; (3) violations of Section 10(b) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder; (4) common law fraud and deceit; (5) negligence and negligent misrepresentation and breach of contract; (6) common law breach of contract; (7) fraudulent concealment and breach of fiduciary duty; and, (8) violation of 18 U.S.C. § 1962(c), the RICO statute.

The grounds of the motion are: a) legal insufficiency of the claims, as well as insufficient pleading thereof under the Rules; b) the bar of applicable periods of limitation; c) existence of general releases executed and delivered covering the claims in suit; and d) lack of jurisdiction of the pendent state-created claims. For the reasons shown hereafter, the suit will, in all respects, be dismissed.

This action arises out of an offering of $2,500,000 of limited partnership interests in Calais Associates (Calais), of which the 16 plaintiffs claim to have purchased a total of 13½ units at $100,000 per unit, for a total investment of $1,350,000. Calais was formed as a limited partnership, pursuant to the laws of Texas, to acquire and operate a 498 unit garden apartment complex in Pasadena, Texas, a suburb of Houston. The interests in the partnership were offered pursuant to a Confidential Investment Memorandum dated October 5, 1979. This was a non-public offering exempt from registration, pursuant to SEC Rule 146. Each investor was advised of this fact and executed a "Purchaser-Investor Statement" acknowledging it.

The gist of the complaint appears to be that the Confidential Investment Memorandum, which was sent to plaintiffs before they purchased, was false and misleading.

*Count I. Section 11 of the Securities Act*

■ Count I is dismissed. The securities involved were not registered and Section 11 does not apply to unregistered securities. Section 11 of the Securities Act, 15 U.S.C. § 77k, provides a remedy for false and misleading statements contained in a registration statement. Recovery under the statute is limited to purchasers of securities issued pursuant to a registration statement claimed to be defective. *See Barnes v. Osofsky,* 373 F.2d 269, 271–72 (2d Cir.1967). Private offerings are not embraced by this section of the Securities Act.

*Count II. Section 12(2) of the Securities Act*

■ An essential condition of liability under Section 12(2) of the Securities Act is that the plaintiff tender the securities he purchased, if they are still held by him. While the language of the section does not indicate the time, place or manner of tender, *see Wigland v. Flotek, Inc.,* 609 F.2d 1028, 1034 (2d Cir.1979), and an offer in the complaint to tender the securities is sufficient to satisfy the condition, *id.* at 1034, the complaint herein does not contain an offer to tender, and is therefore insufficient. This count is, accordingly, subject to dismissal on that aspect alone.

■ Moreover, claims for recovery under § 12(2) must be "brought within one year after discovery of the untrue statements or the omissions, or after such discovery should have been made by the exercise of reasonable diligence...." 15 U.S.C. § 77m. In addition, the statute provides that in no event shall any such action be brought to enforce a liability created under § 12(2) more than three years after the sale. This suit was brought beyond the limited life of such a claim since the partnership interests were sold in December 1979 and the action was not filed until November 27, 1985. The three year period is an absolute bar. *See Summer v. Land & Leisure, Inc.,* 664 F.2d 965 (5th Cir. 1981); *Homburger v. Venture Minerals, Inc.,* [1982] CCH Fed.Sec.L.Rep. ¶ 98,858 at 94,426 (S.D.N.Y.1982). Count II is, accordingly, dismissed.

*Count III. Violations of Section 10(b) of the Exchange Act and Rule 10b–5*

The Complaint fails to allege fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure, requiring the dismissal of the claims under Rule 10b–5 and under RICO. However, all claims under Rule 10b–5 are barred by the applicable statute of limitations, and consequently Count III will be dismissed without leave to replead.

There is no limitary period specified for claims asserted under Rule 10b–5; consequently, courts refer to the statute of limitations of the forum state. *See Armstrong v. McAlpin,* 699 F.2d 79, 86–87 (2d Cir. 1983).

The plaintiffs in this suit reside outside New York, and consequently New York's borrowing statute applies. *See Arneil v. Ramsey,* 550 F.2d 774, 779–80 (2d Cir.1977). According to the borrowing statute, an action accruing outside New York is time-barred if commenced after the expiration of the limitary period provided by the law of either New York or the place where the cause of action accrued. A claim for securities fraud accrues in the state where the loss resulting from the misrepresentation was sustained and not where the defendant committed the wrongful act. *See Sack v. Low,* 478 F.2d 360, 366 (2d Cir.1973). Normally, the economic impact is sustained in the plaintiff's state of residence. *See Arneil,* 550 F.2d at 779. Thus, the claim for fraud under the federal securities law accrued in Florida for one plaintiff and in New Jersey for the other fifteen, and the Florida and New Jersey statutes of limitations apply to determine whether plaintiffs' claims are time-barred.

The Florida statute applicable to 10b–5 claims is the Florida two year Blue Sky Law. *See Byrne v. Gulfstream First Bank and Trust Co. of Boca Raton,* 528 F.Supp. 692–93 (S.D.Fla.1981). The applicable New Jersey statute of limitations is the two year statute contained in the New Jersey Uniform Securities Act. *See Corson v. First Jersey Securities, Inc.,* 537 F.Supp. 1263, 1266 (D.N.J.1982).

Although state law determines the applicable limitary period, federal law determines when the period begins to run. *See Arneil,* 550 F.2d at 780. Under federal law, the statute begins to run when the plaintiff becomes aware of the fraud or at the time when the plaintiff should have discovered the fraud. *Id.* at 780. The test as to when plaintiff should have discovered the fraud is an objective one. *See Armstrong v. McAlpin,* 699 F.2d 79, 88 (2d Cir.1983).

Plaintiffs allege a number of misrepresentations in the complaint. In their brief, plaintiffs state that the underpinning of their complaint is the representation that the occupancy rate of the premises was 92% in September 1979. However, plaintiffs also allege misrepresentations concerning the nature and condition of the property, a fire which occurred on the premises, the experience of the General Partner and its associates and the fees they were to receive. All of these misrepresentations were allegedly made in the Confidential Investment Memorandum of 1979.

The alleged misrepresentations concerning the nature and condition of the property clearly could be ascertained at any time after the plaintiffs purchased their interests in the partnership. In addition, the facts concerning the fees and experience of the General Partner were specified in the Investment Memorandum and in the financial statements; the investors were informed of a fire that had occured on the premises prior to the closing in a letter dated December 10, 1979, and in the Financial Statement for 1979. *See* Defendant's Exhibit C. Consequently, the plaintiffs are held to have been able to discover any alleged fraud relating to these subjects in 1979 or 1980; the "commencement of the statutory period does not await a plaintiff's 'leisurely discovery' " *Phillips v. Levie,* 593 F.2d 459, 462 (2d Cir.1979).

So far as concerns the alleged misrepresentation concerning the occupancy rate, all investors, in 1980 and 1981, received financial reports concerning the partnership and the status of the project. These

financial reports indicate that the partnership suffered losses from its inception and that the losses increased each year. In addition, they show that the rent revenues were below those projected. *See* Defendants' Exhibit C.

Moreover, in January 1982, Cantor Fitzgerald advised the investors that the partnership had been consistently suffering losses and that Cantor had made advances of more than $1.4 million in an effort to sustain the property and prevent foreclosure. Cantor stated that it was no longer prepared to advance funds and requested the consent of the limited partners to enter into a net lease with a company controlled by defendant Ron Jeffrey to operate the facility. Cantor explained that if approved by two-thirds of the limited partners, the transaction would be effected and Cantor Fitzgerald and its affiliates would sever all connection to the project. In its memorandum explaining this transaction, Cantor Fitzgerald pointed out that even if the investors consented to this transaction, foreclosure might still be the end result. The memorandum also stated that the occupancy rate of the project was currently 66% and that the physical condition of the premises had deteriorated and was in need of repair. *See* Defendants' Exhibit D.

This memorandum gave plaintiffs sufficient notice of the problems with the project, the losses suffered, the possibility of failure and the fact that the occupancy rate was lower than projected. The plaintiffs also had clear notice that even if foreclosure was avoided by the proposed transaction with Jeffrey, the limited partners might recover only a fraction of their original investment. *See* Defendants' Exhibit D, Memorandum pp. 2, 4–6, 9–10. Any question the plaintiffs might have had concerning the falsity of the 92% occupancy figure quoted at the inception of the project was surely exposed at the time this memorandum was received. The plaintiffs do not allege that they learned any facts between 1982 and the time when this suit was filed which would demonstrate to them that a fraud had occurred.

The question of whether a plaintiff should have reasonably discovered an alleged fraud does not easily lend itself to summary disposition and it is ordinarily a question left to the jury. *See Long v. Abbott Mortgage Corp.*, 424 F.Supp. 1095, 1099 (D.Conn.1976). However, in this case plaintiffs' mere conclusory allegations that they were unable to discover the fraud are insufficient to raise a material issue of fact on the subject of discovery. There is an absence of factual proof from the several plaintiffs to prolong the appropriate discovery period beyond the objective matters referred to above.

A suggestion is made by the plaintiffs that the defendants are prevented from asserting the defense of the statute of limitations because they induced them to delay in filing this action and therefore the doctrine of equitable estoppel should bar defendants from employing the statute. The plaintiffs claim that defendants told them that defendants were going to file a suit on behalf of the Calais Partnership against third parties responsible for the losses and that this representation had the effect of inducing plaintiffs not to file their own suit against the defendants. While in some situations it has been held that an equitable estoppel may arise from a representation or conduct which has induced a party to postpone a suit on a known cause of action or from a fraudulent concealment of an action which is unknown to a party, *see Parsons v. Department of Transportation*, 74 Misc.2d 828, 344 N.Y. S.2d 19, 24 (1973), that doctrine is wholly inapplicable to the case at bar. To constitute an estoppel, the conduct or representation must be a strong inducement. Courts have held that a request not to file an action and that settlement negotiations are not sufficient to constitute an estoppel. *See Procco v. Kennedy*, 88 A.D.2d 761, 451 N.Y.S.2d 487 (1982).

In this case, the allegation is that the defendants merely represented that they might file such an action, and not that they would do so. In fact, defendants did file a suit against third parties on behalf of the

Calais Partnership. The action was brought against the management company retained to manage the property alleging mismanagement and receipt of kickbacks. That action was discontinued because it was determined that there was no significant likelihood of recovery in excess of the costs of the litigation.

Furthermore, there is no claim or indication that the plaintiffs actually relied on the defendants' representation. Plaintiffs state that the representation would "necessarily induce the Limiteds from bringing suit against the General Partner and the affiliates"; however, plaintiffs nowhere allege that they actually relied on the representation or were so induced. Thus the representation by the defendants does not constitute an estoppel.

Accordingly, Count III is dismissed.

*Count VIII. RICO Claim*

■■■ The pleading of the RICO claim is insufficient in both form and substance on which to grant relief. The complaint in this case arises out of a single transaction. The fact that there may have been numerous misrepresentations in connection with this single transaction would not create a pattern under the interpretation of the RICO statute. A single fraudulent transaction does not constitute a pattern; there must be multiple events to satisfy the continuity inherent in the term "pattern." *See Modern Settings, Inc. v. Prudential-Bache Securities, Inc.,* CCH Fed.Sec.L.Rep. § 92,-434, at 92,654 (S.D.N.Y. Jan. 8, 1986); *Allington v. Carpenter,* 619 F.Supp. 474, 484 (D.C.Cal.1985); *Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.,* 615 F.Supp. 828 (N.D.Ill.1985). These cases hold that a pattern requires "repeated criminal *activity,* not merely repeated *acts* to carry out the *same* criminal activity." *Northern Trust,* 615 F.Supp. at 831. Moreover, in *Sedima S.P.R.L. v. Imrex Co.,* —— U.S. ——, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985), the Supreme Court noted that RICO is not aimed at the isolated offender.

■■■ The Complaint also fails to sufficiently allege the nature of the alleged enterprise. The Complaint alleges that the "defendants both individually and jointly, constituted an enterprise (hereinafter the Cantor Fitzgerald enterprise)." This allegation is insufficient for it does not clearly define the enterprise; in addition, Cantor Fitzgerald cannot simultaneously be the enterprise and the person who conducts the affairs of the enterprise. *See Bennett v. United States Trust Co.,* 770 F.2d 308 (2d Cir.1985). Furthermore, the complaint fails to allege the nexus between each defendant and the enterprise since it does not differentiate among the defendants.

■■■ Apart from the substantive insufficiency of the RICO claims as alleged, it sufficiently appears that the RICO claim is barred by the applicable statute of limitations. The statute authorizing civil RICO claims does not contain a statute of limitations and consequently, courts adopt a state statute governing analogous causes of action. *See Teletroncis Services, Inc. v. Anaconda-Ericsson, Inc.,* 587 F.Supp. 724, 733 (E.D.N.Y.1984).

One approach adopted by the courts to determine the most appropriate state statute is to look at the predicate acts on which the RICO claim is based. *See State Farm Fire & Casualty Co. v. Estate of Canton,* 540 F.Supp. 673 (N.D.Ind.1982). If this approach were employed in this case, the two year statute of limitations applicable to the 10b–5 claims would apply.

Another approach is to select a single statute for all civil RICO actions. The Second Circuit has indicated that the proper New York statute of limitations for civil RICO will usually be the three year period provided in CPLR 214(2) governing actions to enforce a liability created by statute. *See Durante Bros. & Sons, Inc. v. Flushing National Bank,* 755 F.2d 239, 249 (2d Cir.1985). Under this statute, the RICO claim would be barred.

Accordingly, Count VIII is dismissed.

*Defense of General Release*

■■■ Thirteen of the sixteen plaintiffs executed releases which provide for release of all claims arising out of (1) the investment in the partnership, including "any and

all representations made by Cantor Fitzgerald or any person associated therewith in connection therewith", (2) the activities of the partnership prior to February 1982 and (3) the execution and delivery of the net leases to Jeffrey. These releases cover all claims asserted by the plaintiffs in this action. The general releases executed by all plaintiffs, except plaintiffs Howard Ballen, Arthur Hochman, and Lewis Goodkin, are at all events a complete bar to all claims asserted on behalf of the remaining 13 plaintiffs, beyond cavil. Not a single one of the 13 has submitted an affidavit herein which would in any way impugn his or her release. The releases were given as part of an extensively negotiated arms-length transaction in which the plaintiffs' interests were represented by legal financial advisors; although not requisite to the validity thereof, each was received or was tendered a substantial consideration for the release.

*Jurisidiction of the State Law Claims*

██ In the absence of any cognizable federal claim, there is no basis for the exercise of pendent jurisdiction. Moreover, the complaint is manifestly insufficient on its face to sustain subject matter jurisdiction under 28 U.S.C. § 1332.

██ A plaintiff is required to demonstrate the existence of diversity jurisdiction on the face of the complaint. *See John Birch Society v. National Broadcasting Co.,* 377 F.2d 194, 197 (2d Cir.1967). The complaint in this case is insufficient since it fails to affirmatively allege the states of citizenship of each of the individual defendants and the principal places of business of each of the corporate defendants.

██ In addition, as to Cantor Fitzgerald Properties, a New York limited partnership, the complaint fails to identify the domicile of the General Partners which is the key to the existence of diversity jurisdiction over a limited partnership. *See Colonial Realty Corp. v. Bache & Co.,* 358 F.2d 178 (2d Cir.1966).

Finally, the complaint fails to allege that the amount in controversy for each of plaintiffs' claims exceeds $10,000, as required by 28 U.S.C. § 1332(b). *See Snyder v. Harris,* 394 U.S. 332, 336–67, 89 S.Ct. 1053, 1056–57, 22 L.Ed.2d 319 (1969).

██ Ordinarily, the dismissal of state law claims on the ground of insufficiency of the pleading permits leave to amend in order to properly establish subject matter jurisdiction. This would apply to the three plaintiffs who did not release their claims. However, since their claims would be arbitrable under the terms of the partnership agreement executed by them, *see* Calais Associates Limited Partnership Agreement, Section 20, (Exhibit A of Confidential Investment Memorandum), it may very well be that the filing of an amended complaint on the part of the three plaintiffs who did not release their claims will be an exercise in futility, since the defendants have expressly reserved the right to move to remand such claims to arbitration. *See, e.g., Rush v. Oppenheimer & Co.,* 779 F.2d 885 (2d Cir.1985). The Court will not undertake to guess the future course of an amended complaint based on diversity jurisdiction claims by the three plaintiffs who have not released all claims, and they are granted leave within 30 days of the date of this opinion to serve and file an amended complaint, if they be so advised. The rulings in respect of the federal claims shall, of course, be applicable as to said three.

The application of the defendants for costs of this action, including attorneys' fees in pursuance of Rule 11 of the Federal Rules of Civil Procedure and Section 11(e) of the Securities Act, 15 U.S.C. § 77k(e) is granted to the extent to be determined upon separate application therefor on affidavits to be filed within 15 days hereof in respect of the frivolous assertion of claims asserted herein under the Securities Act of 1933, and on behalf of the 13 plaintiffs who executed and delivered general releases. The plaintiffs shall have five days thereafter to respond by affidavits in opposition.

So Ordered.