In the Matter of the Estate of JOSEPH EDDY, Deceased.*

Surrogate's Court, New York County, January 7, 1941.

*McCanliss & Early*, for Thomas Dickson, as executor, etc.

*William Roberts*, for Thomas Dickson, individually and as surviving partner of the copartnership of Dickson & Eddy.

*Fearey, Allen & Johnston* [*Henry Alan Johnston* and *Theodore R. Finder* of counsel], for Sally D. Eddy, objectant.

* See *ante*, p. 193.

*Edmund M. McCarthy*, special guardian.

*Bloomberg & Bloomberg*, for Marge A. Kerin and others, objectants.

DELEHANTY, S. In this accounting proceeding the executor of deceased presented as part of his account a report of transactions alleged by him to have been conducted as liquidating partner of the firm of Dickson & Eddy of which deceased was a member. The executor has been under preliminary examination respecting the transactions so reported as those of a liquidating partner and a number of issues are already outlined in the record which the interested parties will litigate if the transactions reported are truly those of a liquidating partner. All of the parties are in agreement that disposal of a preliminary issue of law and fact might operate to diminish the demands upon counsel and limit materially the cost of the accounting proceeding. While the face of the account as filed did not show the fact, it is asserted by the special guardian and by other parties that the executor is bound by an agreement entered into between him and deceased and is disentitled to report as of concern to the estate the business transactions which are made part of the account. By agreement of the parties this separate issue of law and fact has been heard by the court and is here decided.

Deceased and Thomas Dickson, the accounting executor, were partners in a coal business known as Dickson & Eddy. Articles of partnership dated April 15, 1929, required each partner to make a capital contribution of $100,000 in cash. They required proper books of account to be kept and further provided that on the thirty-first day of December in each year a general account should be taken of the " assets and liabilities of the partnership and of all dealings and transactions of the same during the preceding year and all matters and things usually comprehended in accounts of a like nature and in taking such account a just valuation shall be made of all items requiring valuation The profits arising from the business as determined by such account shall be carried to the credit of the partners * * * immediately after every annual account shall have been taken and may be drawn out at pleasure." Under the articles the death of either partner left the survivor at liberty to carry on a similar business, using the old firm name for that purpose, and it was stipulated therein that no allowance for good will should be made to the estate of a dead partner.

On June 18, 1937, the partners executed a supplementary agreement. It referred to the 1929 articles, recited that each partner had contributed capital to the firm and stated that it was their

mutual desire that should either die during the continuance of the partnership " the capital contribution and accrued profits of such deceased partner " should not be withdrawn from the firm except under the terms of the new agreement. The provisions of the new agreement material here are:

" 1. That in the event of the decease of one of them during the term of the copartnership hereinabove referred to, the capital contribution and accrued profits of such deceased partner shall not be withdrawn from the said partnership by the heirs, executors, administrators or assigns of such deceased partner, but shall remain in the said firm, to be paid to the estate of such deceased partner under the terms and conditions set forth hereinbelow.

" 2. That twelve months after the death of such deceased partner the surviving partner shall pay to the estate of such deceased partner twelve and one-half (12½%) per cent of the total aggregate amount of the capital contribution of such deceased partner and such profits, whether divided or undivided, as may have accrued at the time of death to such deceased partner; and on each succeeding twelve months the surviving partner shall pay to the estate of such deceased partner twelve and one-half (12½%) per cent of the balance of the unpaid capital contribution and accrued profits of such deceased partner until the full capital contribution and accrued profits of such deceased partner shall have been paid in full. Provided, however, that nothing herein contained shall prevent such surviving partner from making larger payments than herein provided for or at more frequent intervals.

" 3. That the surviving partner shall pay interest at the rate of five per cent (5%) on the total aggregate amount of the capital contribution of such deceased partner and such profits, whether divided or undivided, as may have accrued at the time of death of such deceased partner, or such portion thereof remaining unpaid as hereinabove provided, to the estate of each deceased partner in four equal quarterly instalments; and the estate of such deceased partner shall have no other interest in the conduct of the firm by the surviving partner except as herein provided.

" 4. That in making payments either of the profits or of principal as hereinabove provided the surviving partner shall furnish a statement of such amounts, and such statement shall be deemed sufficient and final; all other accountings or actions being hereby for the heirs, executors, administrators or assigns of each party hereto expressly waived "

On November 5, 1937, deceased died On that date the value of his interest in the firm according to the partnership books was $608,972.27. The partnership balance sheet as of October 31,

1937, which was prepared subsequent to deceased's death, shows substantially the same figure.

On November 30, 1937, the surviving partner executed a certificate of conducting business in which he stated he would continue the old firm business under the old firm name. On December 9, 1937, he filed this certificate in the office of the clerk of New York county. Cards announcing the death of deceased and the continuation of the business by the survivor were circulated to the trade immediately following the death. On June 15, 1938, Dickson subscribed a partnership return of income for 1937, which showed transactions of Dickson & Eddy until November 5, 1937, the date of Eddy's death. It was stated on the face of this return that the partnership had been dissolved on the death of deceased and that the " business [was] continued thereafter under [the] same name by Thomas Dickson as sole proprietor." Additional documents in evidence clearly show that Dickson by intention and in fact was continuing the business on his own until the summer of 1939. During this *post-mortem* period he withdrew from the business for his personal account the sum of $73,219.56 in cash. This money he restored to the business on October 10, 1939, shortly before proceedings to compel an account by him were initiated.

The executor qualified on December 22, 1937. After the order to account was made he presented a voluntary intermediate account of his proceedings as executor and " as surviving partner of the firm of Dickson and Eddy." In his Schedule A he lists among estate assets a " ½ interest in the partnership of Dickson and Eddy." The inventory value of this asset is stated to be a " deficit." The account filed as liquidating partner gives the detail of transactions which are asserted to justify this deficit item. In pursuance of the program agreed upon the estate beneficiaries and the special guardian have filed preliminary objections which suffice to formulate the issue whether Dickson is required by the agreement of June 18, 1937, to pay into the estate that sum in excess of $600,000 which is shown by the partnership books to have been deceased's " capital contribution and accrued profits " as of the date of his death. At the hearing of these objections the accounting party moved to dismiss them as insufficient in law. This motion is denied. A motion was also made on his behalf to strike out the evidence offered by the objectants in proof of the facts narrated above on the ground that such evidence is immaterial and irrelevant. This motion is likewise denied.

The objectants contend that by the agreement of June, 1937, Dickson was required to pay to the estate of deceased the value of his interest in the business as ascertained by the formula provided

in the agreement. They assert that from the date of deceased's death Dickson has been indebted to the estate for that value. They say that if ever there was any choice open to Dickson to refuse continuance of the business and thus to avoid payment of the value of deceased's interest therein as determined by the formula this choice was lost to him by his election to continue the business as his own and by his actual continuance of it as his own for a substantial period after Eddy's death. The objectants further assert that between Dickson, the surviving partner, and Dickson, the executor of this estate, there has been an account stated by means of which the former became bound to pay the latter the fixed sum (with interest) which the books credited to deceased as of the date of his death. In brief it is the position of the objectants that by the June, 1937, agreement the partner who survived was bound to purchase for a definite sum ascertainable from partnership books the interest of the partner who died and that Dickson acted in conformity with this understanding until it appeared to him that he had made a bad bargain.

The position of the accountant Dickson is that the agreement of June, 1937, merely grants to the surviving partner the privilege of paying the deceased partner's interest " over a period of years instead of at the time required by partnership law." Whether paid soon or late, he contends, the deceased's interest in the firm must be the sum ascertained not by taking off from the partnership books the amount of deceased's " capital contribution and accrued profits " as there reported but by balancing actual assets against actual liabilities, thereby determining the actual sum if any which answers to the expression " capital contribution and accrued profits." He emphasizes his position by saying: " If there is no net partnership estate there is no capital or accrued profits which could be left in the business." The accountant's brief argues further: " If the copartnership did not have at Mr. Eddy's death sufficient assets taken at their actual value to pay the creditors of the firm in full it would be impossible for Mr. Dickson as surviving partner effectively to agree to pay out of the assets of the copartnership a balance arrived at from the nominal value carried on the books. There is no evidence in this case that the copartnership was solvent at Mr. Eddy's death. The intermediate account shows that there is not in hand sufficient money to pay the firm indebtedness in full."

The agreement of June, 1937, is unintelligible unless understood to mean what the objectants say it means. The terms " capital contribution " and " accrued profits " mean only values as shown in the books. Unless that is the meaning there is no way

to measure within any predictable time after deceased's death that sum of money of which twelve and one-half per cent is payable twelve months after death; or to measure that sum on which quarterly interest payments were to be made until such time as the principal charge should have been fully paid to the dead partner's estate. Mr. Dickson by his immediate *post-mortem* conduct showed unmistakably that he understood the agreement to mean exactly what the objectants say it means. His change of heart in 1939 was due, as the court finds, to his ascertainment in 1939 that a large receivable of the old firm was of doubtful collectibility. This receivable amounted to $914,000. In June of 1937, when the supplementary agreement between the partners was executed, this receivable was believed to be collectible in full though its collection was not expected in the then immediate future. When deceased died on November 5, 1937, the surviving partner believed that this receivable was collectible at par and continued in that belief until happenings in certain reorganization proceedings disappointed his hopes. The survivor deliberately chose to act on the agreement of June, 1937, and chose to take over as his own the theretofore partnership property. In so doing he assumed the liability prescribed by the June, 1937, agreement and he must now be held to that liability.

The liquidation of a partnership dissolved by death of a member is controlled by Partnership Law only in the absence of a particular agreement on the subject made by the partners themselves. (*Corr v. Hoffman*, 256 N. Y. 254, 272.) Such particular agreements to meet the contingency of death of a partner are binding. (Cf. *Hermes* v. *Compton*, 260 App. Div. 507; Partnership Law, § 73; 50 Yale Law Jour. Dec. 1940, p. 202.)

The original articles of copartnership required a valuation of the firm assets on December thirty-first in each year. The agreement of June, 1937, did not affect or modify this provision of the original articles. There is no dispute that the value now claimed as the amount payable by the survivor accords with the practice authorized by the original articles. There is no requirement that liquidation must precede the fixation of the value of a deceased partner's interest. (*M. & C. Creditors Corp.* v. *Pratt*, 172 Misc. 695, 706; affd., 255 App. Div. 838; affd., 281 N. Y. 804.) The precise point here involved was present in the English case of *Ex Parte Barber* (L. R. 5 Ch. App. 687). In the cited case the articles of partnership required that as of December thirty-first in each year account should be had of the partners' several interests. By the uniform practice of the firm there in question bad accounts were written off in the year when uncollectibility was ascertained.

Litigation arose because after the share of a deceased partner had been calculated according to the books, it developed that assets believed in the year of his death to have been good assets thereafter proved worthless or of less value. The surviving partners sought to substitute the actually ascertained values for the values established on the books pursuant to the practice of the firm. This the court refused to permit. (Cf. *Coventry* v. *Barclay*, 33 Beav. 1; 55 Eng. Rep. 266.) In legal effect the accountant here has stated an account between himself in his character as purchaser of the deceased partner's interest and himself as executor of deceased's estate. (*Corr* v. *Hoffman, supra.*) He cannot now raise issue as to the rights of partnership creditors. Though it is true that partners cannot agree among themselves to a disposition of partnership assets at the expense of partnership creditors that issue does not arise here. The sole issue here is whether the surviving partner is indebted to the estate. The court holds that he is.

Accordingly the preliminary objections which were formulated for the purpose of permitting determination of this preliminary issue are in all respects sustained. If it is desired to review this determination an interim decree may be submitted on notice to the parties in interest. If the parties deem it desirable to proceed with the accounting as a whole the decision here made will eliminate the necessity for objection to the transactions reported as those of a liquidating partner. Unless any party in interest makes affirmative application for extension of time all objections to other phases of the account must be filed within ten days from the publication of this decision. Proceed accordingly.