■ ANTHONY AUDINO et al., Respondents, v LINCOLN FIRST BANK OF ROCHESTER, as Executor of JAMES H. HAMILL, Deceased, Appellant. (Action No. 1.) KATHERINE GIORDANO et al., as Executors of JAMES H. HAMILL, Deceased, Appellants, v LOUIS P. ATTOMA et al., Respondents. (Action No. 2.) (Appeal No. 1.) — Judgment unanimously modified and, as modified, affirmed, with costs to Lincoln First Bank of Rochester as executor, and matter remitted to Supreme Court, Monroe County, for further proceedings, in accordance with the following memorandum: The decedent, James H. Hamill, was one of six partners in the operation of a nursing home in Rochester. Lincoln First Bank of Rochester (Lincoln First) appeals from a judgment compelling it, as Hamill's executor, to transfer decedent's interest in the partnership to the surviving partners (upon payment to the estate of $30,000 plus interest) pursuant to the buy-out clause contained in paragraph 10 of the partnership agreement dated March 6, 1975. The judgment followed a joint trial of the surviving partners' specific performance action and a cross action brought by Lincoln First and decedent's widow seeking, among other things, to assert rights on behalf of the deceased partner on dissolution of the partnership pursuant to paragraph 12 of the partnership agreement or alternatively, pursuant to section 73 of the Partnership Law. For reasons stated hereinafter, we modify the judgment by reversing the grant of specific performance and dismissing that complaint. We also reverse the dismissal of the second cause of action in the cross action and grant relief on that cause of action as specified hereafter.

The provision in the March 6, 1975 agreement pertaining to purchase and sale of a deceased partner's interest, insofar as relevant, is as follows:

"10. DEATH

"A. Upon the death of any Partner the surviving Partner or Partners shall purchase and the estate of the deceased Partner shall be obligated to sell his entire interest or share of the decedent in the Partnership as provided herein.

"B. Upon the death of any Partner the surviving Partners (or one (1) or more of them) shall give notice in writing of their election to purchase the decedent's entire Partnership interest.

Said notice shall be given to decedent's executor or administrator within three (3) months after decedent's death, or within the period of two (2) months after such executor or administrator shall qualify, whichever period occurs first. The decedent's entire Partnership interest shall then be purchased at the price and the manner hereinafter provided, and the Partnership shall be conducted by the successor Partnership comprised of the surviving Partners * * *

"D. Each surviving Partner shall have the option to purchase a pro rata share of the decedent's entire Partnership interest, based upon that surviving Partner's share of the profits and losses. Any surviving Partner may elect not to purchase the percentage of the decedent's entire Partnership interest allocated to him, provided that the remaining surviving Partner shall elect to purchase his share or that portion of his share which he does not desire. In the event the remaining surviving Partners do not elect to purchase the entire interest allocated to any surviving Partner not desiring to purchase his pro rata share, his election not to purchase his pro rata share shall be null and void.

"E. Upon notification by the surviving Partners of their election to purchase decedent's entire Partnership interest, simultaneously with delivery to the decedent's executor or administrator of the purchase price as hereinabove determined in the form of a certified check or bank cashier's check, together with duly executed promissory notes for the balance of said purchase price, the decedent's executor or administrator shall deliver to the Partners who have thus elected to purchase free from any liens or encumbrances or rights of others therein."

James Hamill died on January 22, 1977 and Lincoln First qualified as executor on February 2, 1977. It is uncontradicted that no notice as required by paragraph 10(B) was ever given, and, indeed, the surviving partners did not assert their claimed rights under the March 6, 1975 agreement until sometime after October 9, 1981, when they first "discovered" that agreement.

In granting specific performance, the court rejected the executor's contention that the right of the surviving partners to purchase the share of a deceased partner under the agreement was an optional right which could be invoked only in compliance with the notice provisions of paragraph 10(B). To the contrary, the court construed the buy-out provision as being mandatory and held that the obligation on the executor to transfer the share of the deceased partner was unconditional and not defeated by the failure of the surviving partners to give notice

pursuant to paragraph 10(B). The purpose of the notice require-
ment, the court reasoned, was "to determine which of the surviv-
ing partners will purchase the deceased partner's interest. It is
not, as the estate claims, to determine *if* any of the partners will
purchase the share." We disagree.

As we read it, the intent of the agreement is clearly that the
rights of the surviving partners are optional, not mandatory.
This is evident from the language. Paragraph 10(B) refers to the
surviving partners' *"election to purchase* the decedent's entire
Partnership interest" (emphasis added). Paragraph 10(D) states
that "[e]ach surviving Partner *shall have the option* to purchase
a pro rata share of the decedent's entire Partnership interest"
(emphasis added). Paragraph 10(E) states "[u]pon notification
by the surviving Partners *of their election to purchase* decedent's
entire Partnership interest" (emphasis added).

While, as the court notes, paragraph 10(A) provides that "the
surviving Partner or Partners shall purchase" and that the
estate of the deceased partner "shall be obligated to sell his
entire interest", these obligations are not unconditional but
arise only "as provided herein", i.e., as provided in the balance of
the agreement, including paragraph 10(B), which contains the
notice provision. A reading of the various provisions in para-
graphs 10(B), 10(D) and 10(E) makes it evident that the duties of
the parties to buy and sell were intended to become binding only
if and when service of the notice of election to purchase is made
as required by paragraph 10(B). Indeed, the last sentence of
paragraph 10(B) specifically relates the time that the binding
mutual obligations to buy and sell arise to the time of the
completion of service of the required notice under paragraph
10(B) with the words: "[t]he decedent's entire Partnership inter-
est *shall then* be purchased" (emphasis added).

If, as respondents contend, the provisions for the purchase and
sale are mandatory and operate irrespective of the surviving
partners giving of notice of their election to purchase, the notice
of election required by paragraph 10(B) can serve no purpose
and the notice provision becomes nugatory. Such construction
would be contrary to the accepted canon that a contract should
not be interpreted so as to render a provision meaningless (see
*Corhill Corp. v S. D. Plants,* 9 NY2d 595, 599; 22 NY Jur 2d,
Contracts, § 221). We cannot accept the court's conclusion that
the notice provision was not intended to limit the time within
which the surviving partners could make their election to pur-
chase but that the provision was included merely as a mecha-
nism for giving the representative of the deceased partner
information as to the identities of those surviving partners who

have decided to purchase. It is highly improbable that the parties to the agreement would have drafted a formal notification provision for the purpose of transmitting information that would necessarily be conveyed as a matter of course. In any event, even assuming that the notice provision was designed solely for the transmittal of such information, that interpretation furnishes no explanation for the time limitations on the giving of notice imposed in paragraph 10(B). If, as the court holds, the buy-out provision is mandatory and operates irrespective of the time when the surviving partners make known their election to purchase, it can be enforced, as here, long after the time limitations have expired. The time limitations, if they do not operate as a condition on the right of the surviving partners to purchase, could have no effect and would serve no purpose. Such construction should be rejected (see *Corhill Corp. v S. D. Plants, supra;* 22 NY Jur 2d, Contracts, § 221).

Inasmuch as paragraph 10 of the March 6, 1975 agreement providing for continuation of the partnership by permitting the surviving partners to purchase the deceased partner's share is inoperative, the partnership was dissolved upon James Hamill's death (Partnership Law, § 62). Paragraph 12 of the agreement furnishes a complete scheme for distribution of the profits and for determining the rights and obligations of the parties on liquidation. Paragraph 12 controls and resort to section 73 of the Partnership Law would be inappropriate (see *Lanier v Bowdoin,* 282 NY 32, 38; *Matter of Eddy,* 175 Misc 1011, 1016, affd 262 App Div 1015, app dsmd 288 NY 524; cf. *Rosen Trust v Rosen,* 53 AD2d 342, 358-359). Accordingly, Lincoln First, as executor, is entitled to share in the liquidation of the partnership as provided by paragraph 12 of the agreement of March 6, 1975, and the judgment appealed from is modified by adding a declaration to that effect. The matter is remitted for such further proceedings as may be necessary or appropriate to effectuate the liquidation as provided in paragraph 12. (Appeal from judgment of Supreme Court, Monroe County, Davis, J. — specific performance — declaratory judgment.) Present — Hancock, Jr., J. P., Callahan, Doerr, Denman and O'Donnell, JJ.