828 F.2d 898
 RICO Bus.Disp.Guide 6733
 Aaron J. FURMAN, Martin J. Joel, Jr., Alvin Katz, Francis P.
Maglio, Harvey Sheid, Everard M.C. Stamm and
Robert C. Stamm, Plaintiffs,
Martin J. Joel, Jr., Harvey Sheid, Everard M.C. Stamm and
Robert C. Stamm, Plaintiffs-Appellants,
v.
John CIRRITO, Harold S. Coleman, John A. Miller, Francis G.
Rea, Peter M. Toczek and A.J. Yorke, Defendants-Appellees.
 No. 18, Docket 86-7283.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 20, 1986.
Decided Sept. 1, 1987.
 
 Seymour Shainswit, New York City (Cooper Cohen Singer Ecker & Shainswit and Steven E. Levitsky, New York City, of counsel), for plaintiffs-appellants.
 Max Gitter, New York City (Paul, Weiss, Rifkind, Wharton & Garrison and Dorothy E. Roberts, New York City, of counsel), for defendants-appellees.
 Before VAN GRAAFEILAND, NEWMAN and PRATT, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 This is an appeal from an order of the United States District Court for the Southern District of New York (Cooper, J.) granting appellees' motion under Fed.R.Civ.P. 12(b)(1) and (6) to dismiss appellants' complaint, and from the judgment entered pursuant thereto. For the reasons that follow, we affirm.
 Appellants' complaint states three causes of action, two that are state law claims of partnership fraud and breach of fiduciary duty and a third grounded on the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Secs. 1961-68. It twice has been dismissed by the district court. The first dismissal was based on appellants' failure to allege a separate, distinct racketeering enterprise injury. 578 F.Supp. 1535 (S.D.N.Y.1984). This Court's affirmance of that decision, 741 F.2d 524, was vacated by the Supreme Court, 473 U.S. 922, 105 S.Ct. 3550, 87 L.Ed.2d 672 (1985), on the basis of its holdings in Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), and American Nat'l Bank & Trust Co. v. Haroco, Inc., 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985) (per curiam). Following remand to the district court, appellees moved to dismiss for failure to allege a "pattern of racketeering activity", 18 U.S.C. Sec. 1962(c), or, in the alternative, to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. Secs. 1-14. Relying on Sedima, supra, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14; id. at 527-28, 105 S.Ct. at 3289-90 (Powell, J., dissenting), and cases that followed, the district court held that racketeering activity must be continuous and related in order to constitute a pattern and must be ongoing or occur in more than one criminal episode. Although the district court felt that appellees' alleged acts were related, it concluded that the complaint failed to allege any continuity of activity, and dismissed the RICO cause of action. The district court held that it then lacked subject matter jurisdiction over appellants' state law claims and refused to address appellees' motion to arbitrate.
 Because the issue on the first appeal was whether a RICO complaint must allege a racketeering injury separate and apart from that which resulted from "the predicate acts of using mail and wire facilities in violation of 18 U.S.C. Secs. 1341 and 1343" (741 F.2d at 526), precise factual allegations were treated in summary fashion only and played no determinative role in our decision. Disposition of the present appeal requires that we take cognizance of certain conceded and undisputed facts and recent substantial changes in the law of mail fraud. Although appellees' motion was made under Rule 12(b)(1) and (6), the record before us consists of more than just the complaint. Specifically, it includes the partnership agreement, which spells out the rights and obligations of the parties, the contract for the sale of the partnership assets, whose terms appellants claim were unfair, and affidavits of counsel for both sides. The district court might have treated the motion as one for summary judgment. See In re G. & A. Books, Inc., 770 F.2d 288, 295 (2d Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986); Grand Union Co. v. Cord Meyer Development Corp., 735 F.2d 714, 716-17 (2d Cir.1984). Despite its failure to do so, we nonetheless may refer to the partnership agreement and contract of sale, which are integral parts of appellants' claim and of the record before us. See Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 113 (2d Cir.1982); 5 Wright & Miller, Federal Practice and Procedure Secs. 1327, 1357, at 593. Examining the complete picture thus presented, we are unable to discover a sufficient allegation of a "pattern of racketeering activity" conducted in the affairs of an "enterprise", United States v. Ianniello, 808 F.2d 184, 190 (2d Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 3230, 976 Ed.2d 736 (1987); indeed, we have difficulty in discovering a sufficient allegation of racketeering activity at all.
 In a complaint based almost entirely on information and belief, appellants accuse appellees of a RICO violation based on the predicate crime of mail fraud. We have, we believe, made it clear that we look with a jaundiced eye upon allegations of fraud based upon information and belief. Luce v. Edelstein, 802 F.2d 49, 54 n. 1 (2d Cir.1986); Decker v. Massey-Ferguson, Ltd., supra, 681 F.2d at 114. Nevertheless, we have carefully reviewed the complaint, in light of the undisputed documents, in an attempt to understand how appellants are attempting to meet their obligation to allege statutorily required charges of criminal wrongdoing. See United States v. Angelilli, 660 F.2d 23, 34-35 (2d Cir.1981), cert. denied, 455 U.S. 910, 945, 102 S.Ct. 1258, 1442, 71 L.Ed.2d 449, 657 (1982). Moreover, unlike the district court in the two hearings before it and this Court on the prior appeal, we have determined the sufficiency of appellants' allegations in accordance with the Supreme Court's "crabbed" construction of the mail fraud statute in McNally v. United States, --- U.S. ----, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987) (Quote is from Justice Stevens' dissenting opinion at 107 S.Ct. at 2889).
 
 
 1
 Appellants' RICO allegations, stated succinctly, are as follows:
 
 
 2
 1. Prior to August 7, 1981, appellants and appellees were general partners in a limited brokerage partnership known as Bruns, Nordeman, Rea & Co. (Bruns).
 
 
 3
 2. Appellees Coleman and Rea were Bruns Managing Directors, and, by the terms of the written partnership agreement, they "were empowered to sell all or substantially all the assets of Bruns 'on behalf of all of the partners' on such terms and conditions as they, in their sole discretion, approved."
 
 
 4
 3. During May and June of 1981, Rea and several members of the Executive Committee negotiated with Bache, Halsey, Stuart, Shields, Inc. (Bache) for the sale to Bache of all or substantially all of Bruns' assets.
 
 
 5
 4. A preliminary agreement on the terms of the purchase contract was reached on June 30, 1981, and a letter of intent was signed on July 2, 1981.
 
 
 6
 5. On July 6, 1981, appellants were informed of the deal, which was described as a fait accompli, whose terms could not be altered.
 
 
 7
 6. At a firm meeting on July 23, 1981, appellants learned for the first time that their signatures would be required on the purchase agreement that was to be executed.
 
 
 8
 7. On July 27, 1981, all of the appellants executed the agreement.
 
 
 9
 8. Appellants were defrauded because they were not told "in a timely manner" that their signatures would be required, that as a result some of the partners were secretly favored over others and appellees did not discharge their "duty of finding the potential purchaser willing to make the largest offer for Bruns' assets."
 
 
 10
 It is readily apparent that the crucial element in appellants' claim of mail fraud is appellees' alleged failure to promptly inform them that they would have to sign an eventual agreement with Bache. We think that, as an allegation of criminal wrongdoing, this claim borders on the specious.
 
 
 11
 It is undisputed that, although appellants and appellees were general partners in Bruns, their interests in the firm were far from identical. The six appellees accounted for 75 percent of the general partners' equity, and the remaining 25 percent was allocated among seven partners, four of whom are now appellants. In view of appellees' substantially greater financial interests, it is not surprising that, between them, they comprised the firms' Managing Directors and Executive Committee, which together had the primary responsibility for Bruns' operations.
 
 
 12
 It is likewise not surprising that, under the terms of the partnership agreement, the Managing Directors had "full power and authority on behalf of all of the partners, at any time, to sell or otherwise transfer all or substantially all of the assets and business of the partnership, on such terms and conditions as the Managing Directors, in their sole discretion, [might] approve." The agreement also provided that it would terminate automatically upon the sale of all or substantially all of the partnership assets as an entirety or the merger or consolidation of the partnership with or into another partnership or corporation. Upon such termination, the Executive Committee was to liquidate the partnership.
 
 
 13
 The rights and obligations of partners, as between themselves, are fixed by the terms of the partnership agreement. Levy v. Leavitt, 257 N.Y. 461, 466, 178 N.E. 758 (1931). "If complete, as between the partners, the agreement so made controls." Lanier v. Bowdoin, 282 N.Y. 32, 38, 24 N.E.2d 732 (1939). Even terms which permit self-dealing by a partner will be enforced. Riviera Congress Assocs. v. Yassky, 25 A.D.2d 291, 295, 268 N.Y.S.2d 854, aff'd, 18 N.Y.2d 540, 277 N.Y.S.2d 386, 223 N.E.2d 876 (1966); Raymond v. Brimberg, 99 A.D.2d 988, 473 N.Y.S.2d 437 (1984) (mem.); Crane and Bromberg on Partnership, sec. 5, at 43 (1968). Since appellees were acting pursuant to their contractual authority in agreeing to sell the partnership assets, we find no merit whatever in appellants' contention that such sale constituted criminal wrongdoing. See Fershtman v. Schectman, 450 F.2d 1357, 1360 (2d Cir.1971), cert. denied, 405 U.S. 1066, 92 S.Ct. 1500, 31 L.Ed.2d 796 (1972). We find no support for this contention in appellants' allegation upon information and belief that, after appellees had agreed to sell to Bache, they were made aware that a principal of another brokerage firm "was prepared to negotiate the purchase of Bruns at a price that would match or exceed that offered by Bache", and that no appellee made any effort to ascertain whether the "offer" of that firm was superior to that of Bache. Of course, "prepared[ness] to negotiate" is not an "offer" to purchase. In view of the absolute and sole discretion vested in the Managing Directors and the preexisting sales agreement with Bache, this is a frivolous allegation of wrongdoing.
 
 
 14
 Equally frivolous is appellants' allegation that appellees were guilty of criminal conduct because they failed to promptly inform appellants that they would be required to sign the written contract between Bruns and Bache. Although Bruns' Managing Directors had the undoubted authority to agree to the sale of the partnership assets, they had no power or authority to deliver their partners to Bache along with the assets. "A contract of employment cannot arise against the will or without the consent of an alleged party thereto." 56 C.J.S. Master and Servant Sec. 5 at 63; Morgan v. Wheland Co., 66 F.Supp. 439, 440 (E.D.Tenn.1946). Each Bruns partner and employee had the right to negotiate on his or her own behalf whether, and on what terms, he or she was willing to become associated with Bache.
 
 
 15
 We note that the partnership agreement required the Managing Directors to give the other partners notice of a proposed sale "not less than thirty (30) days prior to the effective date of the transaction." This was not a meaningless provision. See Audino v. Lincoln First Bank, 105 A.D.2d 1091, 1093, 481 N.Y.S.2d 928 (1984) (mem.), aff'd, 65 N.Y.2d 631, 491 N.Y.S.2d 158, 480 N.E.2d 747 (1985). Its obvious purpose was to give the other partners an opportunity to negotiate with Bache and to decide where their best interests lay. The contract between Bruns and Bache contains specific employment or compensation provisions, not only for the six appellees but also for four of the plaintiffs, two of whom are appellants. These provisions for the four plaintiffs would be meaningless if plaintiffs did not personally assent thereto, and, as experienced businessmen, plaintiffs surely knew that. Indeed, the contract provisions for salaries was expressly conditioned upon the recipients' agreement to become employees of Bache.
 
 
 16
 We note also that several of the partners, including plaintiffs Alvin Katz and Robert C. Stamm, were members of stock exchanges, and under the terms of the partnership agreement they had to determine what disposition was to be made of those memberships. Although the Bache contract provided for transfer of exchange memberships, this obviously could not be accomplished without the concurrence of individual members.
 
 
 17
 Even if we accept appellants' implicit contention that they lacked sufficient sophistication to know that they could not be bonded over to Bache without their consent, they make no allegation of anything that prevented them on July 23 from refusing to sign the Bache contract unless they received more favorable personal treatment. Indeed, appellants were in as good, if not better, position to demand more favorable treatment on July 23 than they were a month earlier. At this stage in the proceedings, there certainly was more pressure on the parties to complete the transaction than there was at the outset of negotiations. Moreover, the written contract specifically provided that it could be amended or supplemented if the parties decided that such amendment was "necessary, desirable or expedient * * * to facilitate * * * the consummation of the transactions contemplated hereby." Appellants' contention that their signatures were coerced by criminal conduct on the part of appellees and that they were "forced to accept employment" on unfavorable terms is too conclusory to support a charge of criminal wrongdoing.
 
 
 18
 Assuming for the argument that appellants have spelled out some form of criminal fraud on appellees' part, they have not alleged a pattern of racketeering activity conducted in the affairs of an "enterprise". In Sedima, supra, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, the Court held that in order for there to be a pattern of racketeering activity, there must be continuing activity or continuity in the conduct at issue. There, the Court was concerned whether there was sufficient continuity and relatedness in the allegedly wrongful acts that they could be said to constitute a pattern. In United States v. Weisman, 624 F.2d 1118 (2d Cir.), cert. denied, 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 91 (1980), and again in United States v. Ianniello, supra, 808 F.2d 184, this Court faced the question whether RICO also requires continuity and relatedness in the alleged "enterprise". We answered this question in the affirmative:
 
 
 19
 As discussed above, we believe that the inquiry as to relatedness and continuity is best addressed in the context of the concept of "enterprise" expressed in section 1962(c), and to a lesser extent, the ten year requirement of section 1961(5). An enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct" and "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." United States v. Turkette, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). This circuit requires that, under section 1962(c), the enterprise be a continuing operation and that the acts be related to the common purpose.
 
 
 20
 Ianniello, supra, 808 F.2d at 191; see also Beck v. Manufacturers Hanover Trust Co., 820 F.2d 46, 51-52 (2d Cir.1987).
 
 
 21
 Appellants contend that the Bruns partnership was the "enterprise" required by RICO, but assert in the same breath that the partnership was dissolved by the sale to Bache on August 7, 1981. Moreover, the very acts of which appellants complain were part of the dissolution process. Although, at first blush, the mere existence of a partnership entity would seem to satisfy the requirement of "enterprise", see 28 U.S.C. Sec. 1961(4), if an inquiry as to the necessary elements of continuity and relatedness is directed at the enterprise, then just being a partnership is not enough. The statute says that "enterprise" includes partnerships, corporations, etc.; it does not say that all these entities always must be considered to be "enterprises". The existence of an enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." United States v. Turkette, supra, 452 U.S. at 583, 101 S.Ct. at 2528 (emphasis supplied). According to appellants' complaint, at the time the allegedly wrongful acts occurred, the Bruns partners were not functioning as a continuing unit in an ongoing organization. Instead, the Bruns Managing Directors were said to be acting solely on their own to prevent the alleged enterprise from being an ongoing, continuing unit. While appellees' conduct need not have been in furtherance of the partnership affairs in order to bring their acts within the ban of RICO, United States v. LeRoy, 687 F.2d 610, 616-17 (2d Cir.1982), cert. denied, 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983), since the effect of their acts was to remove Bruns from the very definition of enterprise, the requirement of continuity was not satisfied. We need not determine whether any basis other than RICO exists on which liability might be properly alleged. We simply conclude that a RICO violation has not been adequately pleaded.
 
 
 22
 The instant case is a paradigmatic example of the unfairness that results when RICO, a statute intended to be an "assault upon organized crime and its economic roots", Russello v. United States, 464 U.S. 16, 26, 104 S.Ct. 296, 302, 78 L.Ed.2d 17 (1983), is used in an attempt to make a "federal case" of a simple falling out between partners. Giving appellants the benefit of every doubt, we conclude they have not succeeded in their attempt. For all of the foregoing reasons, the judgment of the district court is affirmed.
 
 GEORGE C. PRATT, Circuit Judge, dissenting:
 
 23
 I respectfully dissent. Not only does the majority fail to assume the facts are as plaintiffs allege them to be, as is required on a motion to dismiss, but it compounds this error by making determinations that are directly contrary to those of the district court and of a unanimous panel of this court on the prior appeal in this case, Furman v. Cirrito, 741 F.2d 524 (2d Cir.1984) ("Furman I "), vacated and remanded, 473 U.S. 922, 105 S.Ct. 3550, 87 L.Ed.2d 672 (1985), on remand, 779 F.2d 36 (2d Cir.1985). Moreover, the majority fails to heed recent circuit precedent that should control this appeal, United States v. Ianniello, 808 F.2d 184 (2d Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 3230, 97 L.Ed.2d 736 (1987). As the concluding paragraph of the majority's opinion explicitly illustrates, this case now stands next in a long line of judicial attempts to construe narrowly RICO despite congress's express mandate that it should "be liberally construed to effectuate its remedial purpose." Pub.L. 91-452, Sec. 904(a), 84 Stat. 947. See Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 497, 105 S.Ct. 3275, 3286, 87 L.Ed.2d 346 (1985).
 
 
 24
 The district court here found only that there was no "pattern" to defendants' racketeering activity. The basis of that conclusion--that Sedima's footnote 14 altered the law governing racketeering patterns and that multiple fraudulent episodes are required--was eliminated by Ianniello. In affirming the district court, the majority relies on alternative grounds, neither of which was raised or addressed by the parties, and neither of which is supported by the law or the alleged facts. If this case were to be decided on the issues addressed by the district court and argued by the parties, Ianniello would require reversal. Since it is, instead, being decided by the majority's conclusions that no racketeering activity has been alleged and that there was no "enterprise", I can only dissent.
 
 
 25
 A. The Presence of Alleged Racketeering Activity.
 
 
 26
 It is required on a motion to dismiss a complaint to treat as true plaintiff's factual allegations, Fifth Avenue Peace Parade Comm. v. Gray, 480 F.2d 326, 331 (2d Cir.1973) (on "a motion to dismiss on the pleadings, the allegations of the complaint * * * had to be accepted as true"), and to dismiss only if "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief", Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The majority, however, finds it difficult to hold to these fundamentals, variously characterizing plaintiffs' allegations as "border[ing] on the specious", "frivolous", and "conclusory". When a proper lens is used to view plaintiffs' complaint, however, a far different picture emerges.
 
 
 27
 Plaintiffs allege that the sale of the Bruns partnership was accomplished by means of fraudulent concealment of material information (the fact that without plaintiffs' signatures on the sales agreement Bache would not proceed with the sale) in violation of the partnership agreement, which, as the majority concedes, required the managing directors to give notice of a proposed sale to their partners "not less than thirty (30) days prior to the effective date of the transaction". Moreover, plaintiffs allege, in reaching the sales agreement, several of the defendants accepted pay-offs that induced them to agree to the terms negotiated by the managing directors, even though terms more favorable to the partnership were obtainable.
 
 
 28
 Rather than taking these allegations as true, the court states that it has "carefully reviewed the complaint, in light of the undisputed documents, in an attempt to understand how appellants are attempting to meet their obligation to allege statutorily required charges of criminal wrongdoing." With all due respect, the majority in actuality holds that plaintiffs have failed to justify their charges, rather than to allege the wrongdoing necessary in a RICO complaint. Nevertheless, the majority is forced to concede that the district court did not view this motion to dismiss as one for summary judgment, and if it had, it would have been obligated by Fed.R.Civ.P. 12(b) to afford plaintiffs "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." See In re G. & A. Books, Inc., 770 F.2d 288, 294-95 (2d Cir.1985) ("[t]he essential inquiry is whether the appellant should reasonably have recognized that the motion might be converted into one for summary judgment or was taken by surprise"). Even if the majority is correct that "the district court might have treated the motion as one for summary judgment", it surely was not error that it did not, and given that it did not, plaintiffs could not have foreseen that this court on appeal suddenly would do so, especially since the defendants made clear in the motion itself that "[f]or our motion to dismiss, we rely on the law" rather than the facts, and since defendants recognize in their brief on appeal, "Because this is an appeal from dismissal of the complaint, we must accept the allegations of the complaint as true."But even if we assume that defendants did not violate the notice requirement, the weight the majority places on the managing directors' contractual authority to dispose of the partnership assets "in their sole discretion" is unjustified. The majority says, "Since appellees were acting pursuant to their contractual authority in agreeing to sell the partnership assets, we find no merit whatever in appellants' contention that such sale constituted criminal wrongdoing." The majority points out that under New York law, "[e]ven terms which permit self-dealing by a partner will be enforced"; but the case cited for that proposition, Riviera Congress Assocs. v. Yassky, 18 N.Y.2d 540, 548-49, 277 N.Y.S.2d 386, 392-93, 223 N.E.2d 876, 879-80 (1966), holds only that when partners are "fully apprised" that their fellow partners intend to engage in self-dealing, such apprisal "has the effect of 'exonerating' the [self-dealing partners], * * * from adverse inferences that might otherwise be drawn against them simply from the fact that they dealt with themselves." Id. at 548, 277 N.Y.S.2d at 393, 223 N.E.2d at 880 (citation omitted). Nothing in Yassky, or in other New York law, permits partners to self-deal and conceal it from their partners.
 
 
 29
 The majority relies primarily on paragraph 37 of the Bruns partnership agreement, which provides:
 
 
 30
 The Managing Directors, by unanimous vote, shall have full power and authority on behalf of all the partners, at any time, to sell or otherwise transfer all or substantially all of [the] assets and business of the partnership, on such terms and conditions as the Managing Directors, in their sole discretion, may approve, provided that notice in writing of such proposed transaction shall be given to all of the partners not less than thirty (30) days prior to the effective date of the transaction.
 
 
 31
 They point out that under paragraph 37, "Although Bruns' Managing Directors had the undoubted authority to agree to the sale of the partnership assets, they had no power or authority to deliver their partners to Bache along with the assets. * * * Each Bruns partner and employee had the right to negotiate on his or her own behalf whether, and on what terms, he or she was willing to become associated with Bache."
 
 
 32
 In other words, according to the majority, each of the plaintiffs could have negotiated for better terms of his employment or, if not satisfied, could have opted out of the deal and obtained employment elsewhere. Plaintiffs, however, allege, in paragraph 12 of the complaint, that "Bache would not complete the contemplated transaction with Bruns unless and until each and every one of the general partners of Bruns consented to the transaction and evidenced that consent by signing the Purchase Agreement. However, none of the plaintiffs were informed that Bache was insisting upon their consents."
 
 
 33
 Assuming, as we must, that this is true, its significance becomes paramount because each one of the plaintiffs could, by refusing to sign up, have done far more than simply "opted out" of joining Bache; they could have instead killed the entire deal and along with it the "sweetheart" contracts that defendants had negotiated for themselves. Defendants thus concealed from plaintiffs the extent of the power that Bache's negotiating position had conferred on each of them.
 
 
 34
 Nowhere does the majority mention this crucial allegation, nor does it give any reason why paragraph 37 justifies defendants' self-dealing and fraud in concealing from plaintiffs the full picture of the conditions demanded by Bache. Paragraph 37 does not, clearly and unambiguously, authorize defendants to withhold from their partners crucial parts of the deal. At the very least then, if that paragraph is to be construed as permitting this unusual kind of self-dealing and concealment thereof, and as overriding the normal tenet of partnership law that partners owe to one another a fiduciary duty of the "utmost good faith, fairness, [and] loyalty", Newburger, Loeb & Co., Inc. v. Gross, 563 F.2d 1057, 1078 (2d Cir.1977), quoting Crane and Bromberg, Law of Partnership, Sec. 68, at 390 (1968); see also N.Y. Partnership Law Sec. 43(1) (McKinney 1948); Meinhard v. Salmon, 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928) (Cardozo, Ch.J.) ("[A] trustee is held to something stricter than the morals of the marketplace. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior."), such a conclusion should be reached only after a finder of fact has so construed it, based on extrinsic evidence showing additional circumstances not apparent on the face of the agreement.
 
 
 35
 Until and unless congress changes RICO, mail and wire fraud are as much predicate acts of racketeering activity as murder and blackmail. As judges we have no right effectively to remove from RICO two crimes, mail fraud and wire fraud, that congress has decreed are among the hallmarks of racketeers. The majority seeks to distinguish fraud from other racketeering activity by saying, "We have, we believe, made it clear that we look with a jaundiced eye upon allegations of fraud based upon information and belief." The apparent basis for this statement is Fed.R.Civ.P. 9(b): "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." See Luce v. Edelstein, 802 F.2d 49, 54 n. 1 (2d Cir.1986); Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 114 (2d Cir.1982). But rule 9(b) requires only that "a complaint 'must allege with some specificity the acts constituting the fraud.' " id., quoting Rodman v. Grant Foundation, 608 F.2d 64, 73 (2d Cir.1979). Obviously, there is no violation of rule 9(b) here, since plaintiffs have specifically pinpointed the acts and circumstances they allege were fraudulent, and since the district court did not find, nor do defendants allege, any failure to comply with the rule. Instead, the majority extrapolates from the rule a "jaundiced eye" with which to regard allegations of fraud, even when made in compliance with the rule. I see no basis on a rule 12(b)(6) motion for the majority to reject properly pled allegations of fraud, even ones "based upon information and belief", see Schlick v. Penn-Dixie Cement Corp., 507 F.2d 374, 379 (2d Cir.1974) ("While all of [the] allegations are stated on information and belief, * * * the particularity requirement may be satisfied if, as here, the allegations are accompanied by a statement of the facts upon which the belief is founded.").
 
 
 36
 The majority does not merely refuse to assume the truth of plaintiffs' well-pled allegations of fraud; what it really does is decide the fraud issue against them. The proper time and place to decide that issue, however, is at trial, and not on a rule 12(b)(6) motion.
 
 
 37
 The court says that it has "difficulty in discovering a sufficient allegation of any racketeering activity at all." That may be true, but I feel constrained to point out that the district court in this case--twice--had no trouble whatever finding a sufficient allegation of racketeering activity in plaintiffs' complaint, the first time when it dismissed as "semantical strawmen" defendants' arguments that no pattern of racketeering activity had been alleged, Furman v. Cirrito, 578 F.Supp. 1535, 1538 (S.D.N.Y.1984) ("[C]learly, a 'pattern of racketeering activity' is alleged as 2 or more acts of wire and mail fraud have been alleged."), aff'd, 741 F.2d 524 (2d Cir.1984), rev'd and remanded on reconsideration, 779 F.2d 36 (2d Cir.1985), and the second time when it decided, in granting the judgment on appeal here, that plaintiffs had failed to allege a pattern. As Judge Cooper put it, "[W]e do not hesitate to conclude * * * that the complaint alleges defendants engaged in racketeering activity since they used the mails and telephone in furtherance of a scheme to defraud. Thus, the only question remaining is whether such activity formed a 'pattern.' " Furman v. Cirrito, No. 82 Civ. 4428 (S.D.N.Y. March 12, 1986).
 
 
 38
 Moreover, the racketeering activity alleged in this complaint was apparent not only to the district court. In Furman I, a unanimous panel of this court, reviewing the same complaint, reached the following conclusion on the same allegations:
 
 
 39
 [I]t is apparent that plaintiffs have sufficiently alleged those facts required by the statutory language * * *. The alleged pattern of racketeering activity was repeated use of the mails and the wires, in furtherance of defendants' underlying scheme to defraud plaintiffs by concealing from them * * * the true conditions for the sale of Bruns.
 
 
 40
 Furman I, 741 F.2d at 527. It seems somewhat strange that four federal judges could find sufficient allegations of racketeering activity in the complaint that the court today is able to dismiss, before an answer to the complaint has even been filed, for lack of such allegations.
 
 
 41
 B. The Presence of a Racketeering Pattern.
 
 
 42
 Since the majority concludes that plaintiffs have failed to allege any racketeering activity, they never come to grips with the only issue raised and briefed by the parties, the content of the RICO requirement that there be a "pattern" of such activity. Since I would conclude that plaintiffs have alleged racketeering activity, I would reach the further issue of the pattern requirement, and would reverse the judgment of the district court on the strength of our recent decision in Ianniello.
 
 
 43
 In a nutshell, this is the situation: in Furman I, this court determined that plaintiffs alleged a pattern of racketeering activity. On remand, the district court, believing that the intervening Supreme Court decision in Sedima had altered the law on the pattern requirement, decided that no pattern was alleged. After that, however, this court held in Ianniello that Sedima had not altered the law applied in Furman I. From this, I can conclude only that Ianniello undercuts completely the basis for the district court's decision. Obviously, the majority disagrees. Hence, a more complete discussion of Sedima and Ianniello is necessary.
 
 
 44
 The core of the controversy surrounding footnote 14 of Sedima is what the Court meant by "continuity" and "relatedness", which it indicated were necessary elements of a "pattern" of racketeering activity. The meaning of footnote 14 has divided the courts that have considered it, see, e.g., Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc., 615 F.Supp. 828, 833 (N.D.Ill.1985) (Sedima created a "whole new ballgame"); Bank of America National Trust & Savings Assn. v. Touche Ross & Co., 782 F.2d 966, 971 (11th Cir.1986) (nine predicate acts all part of one scheme satisfy pattern requirement after Sedima ), but Ianniello settles its meaning for our circuit: any necessary "continuity" and "relatedness" are to be found not in "pattern", but in the concept of "enterprise", 18 U.S.C. Sec. 1962(c), and in the requirement that the predicate acts take place within a ten-year period, 18 U.S.C. Sec. 1961(5). Ianniello, 808 F.2d at 190. See also United States v. Weisman, 624 F.2d 1118, 1122 (2d Cir.1980).
 
 
 45
 The majority seeks to distinguish Ianniello by finding an absence of an "enterprise" here because the enterprise that might satisfy the pattern requirement--the Bruns partnership itself--was dissolved by the very acts alleged by plaintiffs to have amounted to racketeering. This novel theory, which was never even suggested by defendants or briefed by either side, ignores the simple fact that the dissolution of Bruns occurred as a result of--and after--the fraud took place. The fact that defendants' scheme was successful in putting an end to the enterprise surely should not insulate the schemers from RICO liability. In cases where the purpose of the racketeering activity is to put an end to the enterprise and to profit thereby, there is no reason to believe that congress intended to leave the injury unremedied. It would be anomalous to allow these defendants to escape RICO liability simply because their racketeering was successful in achieving its intended result: termination of the enterprise.
 
 
 46
 The majority further resists the conclusion that the Bruns partnership was itself the RICO enterprise by implying that defendants' actions were somehow not in the conduct of the enterprise's affairs, a position that, of course, is inherently inconsistent with their earlier conclusion that the partnership agreement authorized defendants to do what they did. The majority says, "[A]t the time the allegedly wrongful acts occurred, the Bruns partners were not functioning as a continuing unit in an ongoing organization. Instead, the Bruns Managing Directors were said to be acting solely on their own to prevent the alleged enterprise from being an ongoing, continuing unit." Yet, Sec. 1962(c) of RICO provides:
 
 
 47
 It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate, or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
 
 
 48
 18 U.S.C. Sec. 1962(c) (emphasis added). To conclude as the majority apparently does that the sale of the partnership is not "in the conduct of such enterprise's affairs" is surprising, to say the least. That defendants were self-dealing in the conduct of Bruns' affairs does not make their actions any less "in the conduct of [Bruns'] affairs"; what it does do is make their self-dealing, their concealment of it, and their use of the mails in furtherance of it, racketeering.
 
 
 49
 While the majority here motors past Ianniello with hardly a glance in the rear view mirror, another panel's recent opinion in Beck v. Manufacturers Hanover Trust Co., 820 F.2d 46 (2d Cir.1987), rides right over it. There the court acknowledged that Ianniello rejects any requirement of multiple episodes to allege a "pattern of racketeering activity"; in the next breath, however, it brought the multiple-episode concept back to life by engrafting it onto the "enterprise" requirement. The Beck court defined "enterprise" as the racketeering episode allegedly engaged in by the defendants, rather than as what the statute describes: the organizational vehicle by or through which the racketeering activity is undertaken. See United States v. Turkette, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981) ("The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages."). RICO's plain language makes it improper to conflate "continuing enterprise" and "racketeering activity". By equating "enterprise" with "racketeering activity" and then requiring multiple episodes in order to make the "enterprise" a "continuing enterprise," Beck appears to defer to the authority of Ianniello. Realistically, however, Beck undercuts Ianniello by putting back into the RICO stew the multiple-episode ingredient that Ianniello sought to remove.
 
 
 50
 Such conflict between decisions of this court issued seven months apart, along with the additional confusion that surely will be generated by today's decision, cannot help but make worse what can only be described as a "mess" in the RICO decisions of our district courts. For convenience, I will refer to the following decisions as either "pre-" or "post-Ianniello " and as either in agreement with Ianniello's broad reading of pattern or as restricting the term.
 
 
 51
 Andreo v. Friedlander, 660 F.Supp. 1362, 1369-70 (D.Conn.1987)
 
 
 52
 (Blumenfeld, J.) (post-Ianniello and applying it);
 
 
 53
 In re Gas Reclamation, Inc. Securities Litigation, 659 F.Supp. 493, 514-15 (S.D.N.Y.1987)
 
 
 54
 (Sand, J.) (post-Ianniello and applying it, but reversing earlier, contrary position of Judge Sand);
 
 
 55
 Siegel v. Tucker, 658 F.Supp. 550, 554-55 (S.D.N.Y.1987)
 
 
 56
 (Kram, J.) (post-Ianniello but not mentioning it and restricting "pattern");
 
 
 57
 City of New York v. Joseph L. Balkan, Inc., 656 F.Supp. 536, 544-45 (E.D.N.Y.1987)
 
 
 58
 (Nickerson, J.) (post-Ianniello and applying it);
 
 
 59
 United States v. Weinberg, 656 F.Supp. 1020, 1024-25 (E.D.N.Y.1987)
 
 
 60
 (McLaughlin, J.) (post-Ianniello and applying it);
 
 
 61
 Continental Health Industries, Inc. v. Franklin & Joseph, Inc., 664 F.Supp. 719 (S.D.N.Y.1987)
 
 
 62
 (Carter J.) (post-Ianniello but nevertheless restricting "pattern" by limiting Ianniello to criminal RICO);
 
 
 63
 Procter & Gamble Co. v. Big Apple Industrial Buildings, Inc., 655 F.Supp. 1179, 1182-84 (S.D.N.Y.1987)(Leval, J.) (same as Continental Health Industries );
 
 
 64
 Corcoran v. American Plan Corp., No. CV 86-1729 (E.D.N.Y. Feb. 6, 1987)
 
 
 65
 (Sifton, J.) (post-Ianniello and applying it);
 
 
 66
 Shopping Mall Investors, N.V. v. E.G. Frances & Co., Inc., No. 84 Civ. 1469 (S.D.N.Y. January 30, 1987)
 
 
 67
 (Keenan, J.) (post-Ianniello but nevertheless restricting "pattern" by limiting Ianniello to criminal RICO);
 
 
 68
 State of New York v. O'Hara, 652 F.Supp. 1049, 1052-53 (W.D.N.Y.1987)
 
 
 69
 (Curtin, Ch.J.) (post-Ianniello and applying it, reversing earlier, contrary position of Judge Curtin);
 
 
 70
 Cefali v. Buffalo Brass Co., Inc., 653 F.Supp. 263, 265-66 (W.D.N.Y.1986)
 
 
 71
 (Curtin, Ch.J.) (pre-Ianniello and disagreeing with it; abandoned by Judge Curtin in O'Hara, supra );
 
 
 72
 Gerson v. Rapoport, 651 F.Supp. 395, 397-99 (N.D.N.Y.1987)
 
 
 73
 (McAvoy, J.) (post-Ianniello and applying it);
 
 
 74
 Bankers Trust Co. v. Feldesman, 648 F.Supp. 17, 24-27 (S.D.N.Y.1986)
 
 
 75
 (Conner, J.) (pre-Ianniello and agreeing with its broad construction of "pattern");
 
 
 76
 Baum v. Phillips, Appel & Walden, Inc., 648 F.Supp. 1518, 1533-35 (S.D.N.Y.1986)
 
 
 77
 (Leisure, J.) (pre-Ianniello and disagreeing with it);
 
 
 78
 Kovian v. Fulton County National Bank and Trust Co., 647 F.Supp. 830, 837-38 (N.D.N.Y.1986)
 
 
 79
 (Munson, Ch.J.) (pre-Ianniello and disagreeing with it);
 
 
 80
 Carlucci v. Owens-Corning Fiberglas Corp., 646 F.Supp. 1486 (E.D.N.Y.1986)
 
 
 81
 (Wexler, J.) (pre-Ianniello and disagreeing with it);
 
 
 82
 Beck v. Manufacturers Hanover Trust Co., 645 F.Supp. 675, 683-85 (S.D.N.Y.1986), aff'd on other grounds, 820 F.2d 46 (2d Cir.1987)
 
 
 83
 (Sweet, J.) (pre-Ianniello and disagreeing with it);
 
 
 84
 Bear Creek Productions Inc. v. Saleh, 643 F.Supp. 489 (S.D.N.Y.1986)
 
 
 85
 (Weinfeld, J.) (pre-Ianniello and disagreeing with it);
 
 
 86
 Schaafsma v. Marriner, 641 F.Supp. 576 (D.Vt.1986)
 
 
 87
 (Billings, J.) (pre-Ianniello and disagreeing with it);
 
 
 88
 Richter v. Sudman, 634 F.Supp. 234, 238-40 (S.D.N.Y.1986)
 
 
 89
 (Goettel, J.) (pre-Ianniello and disagreeing with it);
 
 
 90
 Soper v. Simmons International, Ltd., 632 F.Supp. 244, 250-55 (S.D.N.Y.1986)
 
 
 91
 (Sand, J.) (pre-Ianniello and disagreeing with it; found by Judge Sand in In re Gas Reclamation, Inc., supra, to be rejected by Ianniello );
 
 
 92
 Anisfeld v. Cantor Fitzgerald & Co., Inc., 631 F.Supp. 1461, 1467 (S.D.N.Y.1986)
 
 
 93
 (Pollack, J.) (pre-Ianniello and disagreeing with it);
 
 
 94
 T. & S. Commodities, Inc. v. Becharas Bros. Coffee Co., No. 86 Civ. 0070 (S.D.N.Y. Oct. 6, 1986)
 
 
 95
 (Owen, J.) (pre-Ianniello and disagreeing with it);
 
 
 96
 James A. Jennings Co., Inc. v. Calgi, No. 85 Civ. 8787 (S.D.N.Y. Sept. 22, 1986)
 
 
 97
 (Motley, Ch.J.) (pre-Ianniello and agreeing with it);
 
 
 98
 Conan Properties, Inc. v. Mattel, Inc., 619 F.Supp. 1167, 1171 (S.D.N.Y.1985)
 
 
 99
 (Duffy, J.) (pre-Ianniello and agreeing with it).
 
 
 100
 I apologize to any of my district court colleagues whose contribution to this judicial cacophony I may have overlooked. But the point is clear: the content of the "pattern" requirement is a point of sharp division, even after Ianniello, which one would have hoped had settled the issue. Beck, of course, is virtually certain to turn this mild chaos into sheer bedlam.
 
 
 101
 Even in the short time since Beck was decided, in fact, this bedlam has begun to emerge, as several district judges have wrestled with the contradictions between this court's precedents. See Nassau-Suffolk Ice Cream, Inc. v. Integrated Resources, Inc., 662 F.Supp. 1499 (S.D.N.Y.1987) (Pollack, J.) (interpreting Beck as supporting a "narrow" reading of Ianniello, and characterizing the "controlling Second Circuit precedents" as "not totally in unison"), Guilford Mills v. Torf, No. 85 Civ. 9473 (S.D.N.Y. June 4, 1987) (Haight, J.) restricting "pattern" by interpreting Ianniello narrowly in light of Beck ); Goldman v. McMahan, Brafman, Morgan & Co., No. 85-2236 (S.D.N.Y. June 17, 1987), and Soltron Inc. v. McAngus, No. 86-0486 (S.D.N.Y. June 11, 1987) (Leisure, J.)(adopting Ianniello's broad reading of pattern and concluding that Beck did not narrow Ianniello ). Obviously, nothing is clear in this area except the obvious need for definitive and decisive direction from this court, direction that the majority fails to provide.
 
 
 102
 I would reach the "pattern" issue, and decide it simply on the authority of Ianniello, rejecting the distinction between civil and criminal RICO offered by some district judges (but not raised here) as contrary to Sedima's teaching that civil RICO, as well as criminal RICO, is to be broadly construed. 105 S.Ct. at 3286. Because the majority does not even reach this issue, but instead decides this case on grounds not raised by the parties and not, in my view, justified by the law, I dissent.